We appreciate the cooperation of the parties and as you know we've consolidated case 15-893 and 16-1093 in Re Hedloy. Mr. Sunstein whenever you're Honorable judges, good morning. I would like first to address 15-1893 since it's the older of the two. The fundamental incongruity, the clash in this case is on the one hand the claim requires identifying first contact information without user designation of a specific part of the electronically displayed textual information to be subject to the analyzing. And on the other hand, Spencer relied upon reference requires the user to select the fields and saves it as a contact. So on the one hand therefore. When you say Spencer requires the selection of the contact information, just using the diagram that we've all seen and has used from Spencer figure four I guess it is, is that that's the diagram that you regard as being essentially incorporating the heart of what Your Honor, I'm not so sure that that's really what Spencer is about. I don't want to lead you off on to a... That's all right because it's worth talking about this. We spent some time briefing the point first raised by the examiner in his answer to the PTAB below and the examiner says what I'm thinking about the inner box and there's a picture of the box within. And that little box within isn't something that the program started with. So the way Spencer works is I have an email say and somebody sends me their updated contact information. What I do with Spencer is I might use my mouse. Spencer calls it selecting. I select that information and then I push a graphical button and it'll save it. That's what it's really all about. And Spencer tells what's going on there and figure four is part of the processes that go on. If you look in figure four it says array of field values. So the smaller box I take it in the Spencer process has been highlighted. That's essentially what the reason is. It's worse than that. I began with an email coming in and Spencer has a little program working on it and I say okay I want to invoke this little baby to save my contact information. So I select it with my mouse. I click it and then the screen starts changing and it adds that little box. How do I know this? It's laid out in our briefs and it takes a while to figure out. But that little box is where Spencer's showing the intermediate progress where it's going through figuring out what that contact information is, what the fields are in it. But not everything in the smaller box is contact information. Yeah, for example array of field values which is a label. And it's office hours. Office hours is not contact information. Right. So you said initially you select and Spencer you select the contact information. That's correct. You're selecting something that's not exclusively contact information if I understand it. It pretty much, well the rule of Spencer is. Is it all contact information? It's all stuff that will be saved as a contact and when you read the fine print in Spencer everything you select will get processed into the contact. There's no exception. Spencer thinks and depends on the user to tell it what the contact information is. Actually this is the key. This is the real key to Spencer. The user has to tell Spencer what the contact information is and on page 18 of the solicitor's brief the solicitor admits that the user designates the specific part of the text to be analyzed. Well to be analyzed but that doesn't necessarily mean that that gets converted into saved contact information unless there's something else that indicates it. It does. A careful reading of Spencer. What is it about Spencer that tells us that? If you read through the reference in detail and I wish I had more time but the detail of Spencer says that which has been selected gets parsed and that which gets parsed gets saved. Now it's true that some things won't get saved. For example, if it says telephone number, that's not going to get saved because it's an indicator that the telephone number goes in a field for telephone. What's going to happen to office hours for example? Office hours in the smaller box. There's a provision in Spencer that says anything it can't put into one of the identifiable fields gets saved in an additional field of effectively miscellaneous stuff. It all gets saved as part of the contact. That's how Spencer works. How do you know the miscellaneous stuff is contact information? You know it because Spencer tells you that whatever you select is contact information. In other words, there's less than meets the eye here. Spencer isn't that smart. It depends on the user to select the contact information. That information is parsed and then saved as contact. But Spencer, if I understand it, is identifying phone numbers, it's identifying fax numbers, it's identifying addresses and putting those in the appropriate places. Then you say, it also identifies other things that are not in one of the email, fax, phone, etc. address and puts that under miscellaneous information. That sounds like to my ear that it is identifying contact information and identifying another category which is not strictly contact information regardless of what it calls. How did Spencer start? It began by selection by the user. That's the key thing. Right. The user could select a large lump of text that includes a few items of what we would conventionally call contract information. But then Spencer presumably would not select the, hi George, how are you doing, as contact information. In that case, there is no disclosure whatsoever. Is that what it would do? Put it in miscellaneous? What would it do? There's no disclosure in Spencer how more than one contact would get separated from another. None. Zero. So if I select the entire document, it's all one contact as far as Spencer is concerned. It will all get saved. Does it all get saved in the same format? As a single contact. It will do its best to disaggregate the fields. But that's the contradiction. Our claim says that the system does the analyzing to identify contact information. Spencer says the user identifies the contact information. Contradiction number one. In our claim, the system does the analyzing. In Spencer, the user and the purpose of the claim is to identify contact information. In Spencer, the user must show the Spencer system what the contact information is and only after that does Spencer parse it. That's the real big point. When you get into that situation, remember, it's what is selected that is parsed by Spencer. The claim has one of the requirements that's really, really important. That is that when the information has been, that the analyzing to identify contact information must occur without user designation of the part that's going to be analyzed. So the last six words of the claim are without user designation of a specific part of the document. The claim forbids the user to display textual information to be subject to the analyzing. The board pays no attention to what's required there. So the claim forbids the user to select that which is analyzed. Spencer violates that. Do you think that applies even if the user selects the entire document? Absolutely. That's right. Because Spencer is parsing whatever the user has selected in that case as well as in any other situation. But in that case, the user is not identifying the contact information, but would be identifying a big block of text, much like if you were to analyze the entire document. But as far as Spencer is concerned, the user has identified contact information. And as I say, the solicitor admits it on page 18. And you can read Spencer. Every claim requires the user to select the contact information, every independent claim. The summary points out the user selects the contact information. So the Spencer system is just the opposite of what the claim requires. And somehow taking this situation, which is the opposite, one of the cool things about the HeadLoy technology is you push this graphical button. And when that graphical button is pushed, the system of HeadLoy identifies name, address, it identifies contact information in there. And it uses that identified contact information still just from having pushed that graphical button to run a search. Very clever stuff. Spencer does none of that. Of course, it doesn't do a search. But in addition, you have to select the stuff. And it's only the selected stuff that is parsed by Spencer. So we have two violations. First, the violation that the analyzing has to be done by the system, whereas Spencer is depending on the user to select whatever is selected. Secondly, what's regarded as contact information and parsed is that which is selected. And that's a violation of this thing that you cannot point this stuff out to the system. So two violations there. That's the nub of it. And this inner box stuff is interesting and it's well-briefed. But the big picture is simply the user points out the contact information in Spencer. And the claim says that can't be done. And let me just make sure I understand your answer to my earlier question about what constitutes contact information with an eye towards Spencer. Are you saying that the user makes a selection of a box, of a portion of the email, which may include addresses but may include other things as well in Spencer. And are you saying that Spencer treats all that as contact information? It's all shaped as part of that contact, yes. And therefore you might have an address which attached to the address is, hi Bob, how's the wife? If you selected it, yep, that goes right in there. It goes into the contact information file? Yes. Along with the address? Yes. Where in the reference do you rely on for that? Is there like one specific place you can read the reference to? We've cited this in our reply brief, I believe. I'm not going to take the time to find the exact site. But we do say that there is a miscellaneous field in Spencer that is used for stuff that isn't otherwise parsed. But Spencer segregates that stuff from the contact information such as addresses, I take it. When you say there's a miscellaneous field, then you're suggesting that it's treated differently. Well, it's still saved as part of the contact. But that may just be a matter of nomenclature. If it is segregating what we've been conventionally calling contact information from other, the hi Bob. Well, what you call hi Bob gets put in a different file. No, it's not in a different file. Well, it's segregated in some way. It's the same record. These are fields of a record. But it's segregated, you said. They're in a separate field of the record just as telephone numbers, a separate field and so forth. So with the court's permission, I'll move on to another interesting case, which is the appeal 16-1093. And in 1093, there are three limitations that I think were completely mishandled by the PTAB. Let's start with the search limitation. On page two of the final office action, this is the appendix, page 265, the examiner makes an obviousness rejection based on the combination of Miller with a dressmate and Weinreich. And we know this because the examiner explicitly says so on this page, listing each of these three references at the beginning of the rejection. It's exactly there, appendix 265. So he identifies three references. And then thereafter, on the appendix on page 272, the examiner says, Miller fails to explicitly disclose electronically searching in an information source for the first contact information previously identified by analyzing. He says that. Now, the examiner then cites a dressmate for the search limitation. That's also on page 272 of the appendix. But the board says, and this is to me absolutely remarkable, the board says, the examiner relied on Miller, not a dressmate, for the above disputed limitations. That's the original decision, appendix page 12. So we have the examiner saying, I'm using three references. We have the board say, oh, no. The examiner used Miller for everything. Fairness requires candor. Candor is lacking here. And an applicant is entitled to rely on what the examiner says in a rejection. The examiner says he did not rely on Miller for the searching limitation. If the board or the solicitor, for that matter, wants to disagree with the examiner, the board and the solicitor are free to do so. But the board and the solicitor are not entitled to come up with a new theory of rejection while attributing it to the examiner. Says the board, the examiner relied on Miller, not a dressmate, for the above disputed limitations. So the board's new theory of rejection argues that Miller discloses the searching limitation. The board says Miller teaches all of the disputed limitations as explained supra. That's the appendix, page 13. But the examiner said otherwise. Will the real rejection please stand up? I think we're entitled to rely on what the examiner said. This new theory of rejection is not only improper. It's also incorrect. Miller fails to teach. Here's the limitation, actually, in the claim. In an information source, for the first contact information previously identified by analyzing in order to find second contact information, they're associated with the first contact information. The board chooses to ignore that the search must be for the first contact information found in the analyzing step. Then the board chooses to ignore that the search must be in an information source. And that second contact information must be associated with the first contact information in an information source. One of the things that Hedloy did is he said, I'm working in Microsoft Word, for example. I'm writing a letter. And I type the beginning of the inside address, Bruce Sunstein. What's his address? I have to look it up. I have to go to Outlook. But instead, he figures out a shortcut. You push the graphical button, and it identifies that I typed some contact information, a name. It will use that name to do a lookup in the Outlook database. It does the lookup, and if there's nothing else there but that name and it corresponds, it will immediately stick it in right afterwards. That's really smart stuff. All done as part of the technology that Hedloy figured out. And so this idea of a search, it's conducting a search in a database, for example, for the information found by the analyzing. It's real analyzing. It doesn't require user selection. And none of that's in Miller, because Miller is incapable of doing a search for contact information. And they have some very far-fetched theories why Miller's search counts. But those searches don't match the claim limitation. The solicitor, in fact, goes a step further with a remarkable new position, nowhere previously in the record, that contact information means type of contact information. And Hedloy really carefully distinguished between type of contact information. You can look at the claim structure and see there's a beautiful set of distinctions. That's in the solicitor's brief, page 47. The solicitor attributes this to the board, but the cited passage of the board doesn't make that statement. And the solicitor's attempt to make this kind of distinction, it makes hash of the claims. It makes hash of the specification, where the two concepts are always carefully differentiated. I'm running out of time, but the bottom line is that Miller doesn't stand for that search limitation. Miller certainly doesn't meet the type variation limitation in Hedloy's system. If you first start with a name and you do a search, it'll pop up an address. If you start with a name and address, it will do a search for the name and use the address also, see if they match. So the type that you start with can affect the type that you end up with. Miller doesn't have that because Miller doesn't even do a search in a database. The last limitation on initiating electronic communication is a... What about address mate on that score? Just very briefly on address mate. Well, address mate will do a search for an address, but of course that's all it does. It searches for an address. And yeah, you can try to combine them. And we thought that was a silly idea, but we're not arguing that on the appeal. Yeah, address mate does it. But the board has said, as part of this new rejection, that Miller teaches it. And that's absolutely extraordinary. And the point is, the board's attempted a rejection based that way. Shouldn't be allowed. I'm going to reserve my 30 seconds. Thank you so much. Thank you. We'll restart in a couple of minutes. May it please the court? I'd like to start with responding to appeals 2015-1893. The question that you had, Judge Bryson, about how Spencer is working in terms of this analyzing textual contact information without user designation of a specific part. And I think figure four is actually an important figure to look at. And what the examiner and the board found is that in using Spencer, you are selecting text. You're doing a designation, but you're not designating a specific part of the text to be analyzed. What you're doing, they said that interpreting the claim, you can construe it such that you are selecting the entirety of the text to be analyzed. And if you look at what's listed in that smaller box, there are things like facts and the word phone. And if you turn to figure seven on page A2-119, that ends up being the contact verification field. And you'll notice words like facts and phone are not saved. Everything in there is not necessarily contact information. Well, Mr. Sunstein says that Spencer saves everything in the small box or in the portion that is designated. Even, hi, Bob, how's the wife? He says that gets saved as contact information. Now, can you explain to us whether that's not true and what Spencer actually does with the hi, Bob statement? So the way Spencer works, in this disclosure, they don't really talk about if you were to take that hi, Bob. But we have it in figure four because you've got office hours, which I take it is not in a technical sense contact information. Yes. What does Spencer do with that? With the office hours or with the hi, Bob? Well, hi, Bob is outside of the small box, I think, in this particular example. But it doesn't need to be. It doesn't need to be. Someone could select it. So what happens to the office hours? Sure. So if a user selects in the office hours, it does get saved in the miscellaneous section. So if you look at figure seven, you might even see it there. What page of the appendix is that? I'm sorry, A219. Right. So that office hours is in there. But what I was trying to explain in the beginning was the word phone and the word facts would not get saved in there in that figure seven that we're looking at. That is not contact information. That is an identifier of the contact. Would you regard office hours as contact information? I wouldn't. And I don't necessarily... Does Spencer? Well, Spencer... Spencer saves it. Spencer saves it, but I don't think that Spencer considers it to be contact information. It puts it in a miscellaneous area. And so... Would Hi Bob also go into that miscellaneous area if that were within the small box? That's my understanding of Spencer. I don't have something that I can point to because it's not necessarily disclosed here, but I would think they would treat it the same way they treat office hours or a word. In this instance, they have a word like phone and facts that kind of just drops away. So it's not really clear to me what Spencer would do with that. But it's not necessarily contact information. So to sort of respond to whether or not Spencer is the same way, by Spencer saying that it's selecting all of the textual information, that is not choosing a specific part to be analyzed. The examiner construed that particular limitation to mean that it does not preclude instances where you select all of the textual contact information. And the claims aren't read as narrowly as Hedloy would like them to be, and nor is there anything in the specification to suggest that they should be. So if there's no questions on that point, I'd like to move on to the second appeal, where that's 2016-1093, and address the comments that Hedloy's counsel made about Miller. So I think it's important to step back and figure out what it is the examiner found when it looked at Miller. So what's being construed here is a very large limitation. It's that claim one limitation B, the causing an electronic search limitation. And it's very long. And what the examiner said was that Miller discloses the majority of that limitation. But there are two portions of that limitation that Miller does not disclose. The first part is the one dealing with searching in an information source for second contact information. Because what Miller does is it will search for second information, which is what they consider those grammars that cause the actions in Miller. But Miller doesn't teach searching for second contact information, so the examiner relied on AddressMe for that particular part of that limitation. The other part of the limitation that the examiner said was not taught in Miller was the part dealing with that the second contact information will vary depending upon the type of first contact information that is searched. And the examiner relied on Ryan Reich for that part of the limitation. So when Hedloy's counsel is talking about Miller doesn't do the searching for second contact information, the examiner never said that it did. What the examiner is saying is that we have a really large limitation. Miller teaches the majority of it, but we need to rely on other references to fulfill this entire limitation. And so what Miller is doing is searching and getting second information. And AddressMe comes in to do the second contact. What is it exactly that AddressMe does? Mr. Senstein said it does very little indeed. What is it your understanding of what AddressMe contributes to the combination here? So AddressMe, what it's doing is it's using a name to find another, like an address. So if I put in Monica Lateef, or if someone puts in Monica Lateef and they're trying to figure out where I am, it's pulling from a database. From a database. Maybe even the internet. Right. And so that part about the limitation is searching in an information source for second contact information. First contact information would be Monica Lateef. The second contact information would be Office of the Solicitor. Correct, Your Honor. So that's the need for AddressMe. All right. And with respect to the question of whether, I mean, you've covered this a bit, but I want to go back and make sure I understand it. Go on. The argument that Mr. Senstein is making about the misuse or the broader use by the Board of Miller than was done by the examiner, you're saying that there wasn't really an inconsistency between the way the examiner and the way the Board treated Miller because of the limited nature of the distinction between searching for information and second contact information. Yes, Your Honor. All right. That's our argument. So you say that the Board's treatment was entirely consistent with the examiner's treatment in that regard. Yes. All right. Yes, Your Honor. I'm sorry, were you done with that point? I was. Let me ask you about a point which I think I suspect Mr. Senstein was going to get to when I interrupted him at the end of his argument. Sure. I want to ask you about it. The first contact information limitation in the second case. Okay. Your position and the position of the Board is that that includes, wait a minute, not the first contact information. I'm sorry. That's okay. I was on the wrong page. The initiating electronic communication, right? Yes. Initiating electronic communication. The other one is in the first case. I'm sorry. That limitation you say includes internal signals within the system. It doesn't necessarily have to be an external communication such as an e-mail or a phone call. Based on the way the claims are written, yes. Certainly there aren't any examples in the specification of internal signals. As I understand it, it is falling within that category. The specification seems to contemplate some kind of external communication. What is it you think is the basis for saying that that phrase includes any electrical signal from one part of the program to another? From one part of the device to another? What the examiner and the Board found was that the claims, the way they're written, are very broad. There is nothing in Hedloy's specification that defines initiating electronic communication. In fact, the only time that phrase is even used is in the claims themselves. One of the things the claim requires is that this is done with the use of one button. The fact that you can analyze and initiate electronic communication. In Hedloy's invention, you press the one button and it will, according to Hedloy, be able to analyze and initiate electronic communication. Figure out that it's contact information and make the call. It wasn't clear to the examiner and the Board that that's something that can be done in one button. There is internal things going on there when that button is pressed in terms of what's being assessed and processed within the program. There has to be something going on to let the computer program know that this is contact information and something needs to be done with it. There's internal communications going on just off of pressing the one button in Hedloy's invention itself. When the examiner and the Board looked at this particular limitation and didn't see anything defining it and didn't see the claims to be more narrow, they said that using the broader stream of interpretation could mean using a signal to send or retrieve associated data and actions associated with the first contact information. It doesn't have to be something external. It can be an internal thing. This is a computer program. There's a lot of things happening behind the scenes. Had you been the examiner and had this issue come up, would it have been enough to clarify the scope of the claims that Hedloy is now asserting is, in fact, the proper construction of the claims if they added the word external between initiating and electronic communication? So if they had said... Initiating external electronic communications or something. I'm just flying by the seat of my pants, but I suppose it's something like that. I think that would be more helpful. As I stand here, I'd like to think about it a little bit, but I think that would get them closer to where they want to be, absolutely. There's nothing in the claim language as it's written right now to make it that limiting to be an external communication. So if there's no further questions, I yield my time. Thank you. We'll restore three minutes. Thank you. I just wanted to note in response to the question of Judge Bryson that in our reply brief on page 14, we do address... In which case? I'm sorry. In the second case. Actually, the first case. Oh, the first case. Okay. In the first case, 1893, on page 14 of our reply brief, we do talk about how anything that doesn't fit elsewhere gets saved as part of that contact, and we cite in Dispenser Column 5, lines 28 to 33. And finally, I would note in the other case, the Weinreich reference, as we mentioned in the brief, always retrieves the same type of information, namely the full record. And what it displays depends on whether there's one record or two records, more than one record, and then it displays the partial stuff. So that type variation limitation in that second case isn't satisfied by Weinreich, and we spent a little more time on that on the brief. So I think the Court's questions are spot on, and we think ultimately that these cases, these particular cases, raise question about fairness and candor in the proceedings, and we deeply appreciate the Court's consideration. What do you say about the solicitor's argument that the Board, in fact, did appreciate the scope of the examiner's handling of Miller, and that they parsed the search limitation in a way that was consistent with the examiner's treatment? You disagree, I know, but flesh it out for me a little. Yes. The language, I think we should be entitled to say, if the examiner cites three references, and then goes in to show how, in his view, Weinreich covers the type variation, and address mate covers the search limitation, we're entitled to rely on that. And strikingly, the Board said, as kind of a new ground of rejection, I think the Board was uneasy with that ground of rejection, because they said particularly that Miller satisfies the search limitation, and it satisfies the type variation limitation. And they had to come up with a really strained interpretation of this, because what Miller does, and it does well, it's an interesting technology that was developed by Apple, that was used for a while, Apple data detectors, that identifies contact information in a document. And when it does identify that contact information, it allows the user to take actions. So if it identifies a phone number, one of the actions that you can take is dial telephone number. If it identifies a name, one of the actions is save an address book. But Miller doesn't do searching. And, of course, that's the heart of the searching limitation, is to do searching. But address mate does the search. Exactly. So that makes sense for why address mate does. But why does the Board say... Contact information, right? Thank you. Yes. I love it. No, go ahead. But Miller doesn't do that. And the Board says that Miller does do it. I mean, it's extraordinary. And then they say the examiner said that Miller does do that. I mean, one of the complexities here is the examiner did say a lot of stuff. And he kind of wandered around. But examiners are allowed to wander around if they want. But after he says all this stuff about Miller, he says, but Miller fails to teach the searching limitation. And then he goes on and says address mate does. I think we're entitled to rely on that. And we shouldn't be allowed to have the Board coming up with a new theory in disguise because it's not fair. Now, one final question. The initiating electronic communication limitation, presumably you could have resolved this problem simply by explaining maybe with one word of external or some equivalent. But you didn't. Why not? It took a while to figure out what this examiner was doing, frankly. Well, it's pretty clear, I think, with respect to this limitation that he was saying that this is not, at least could have been clearer as to what you meant. Well, one thing that happens, if you read the disclosure and compare it with the claims, in figure one of the application, there's a flow diagram that shows all the processes that are going on. And if you take a look at the way the claim is mapped, you can see the claim mapping to these different events. And there is a situation where you get to around, I believe it's box 10, where if you find something that's not a name or address but something else, it then talks about other appropriate action. And the application goes through a really nice description that says in those situations where it finds an e-mail address or a telephone number, it can initiate sending an e-mail or sending a fax. It talks about that very explicitly. And when we wrote this claim, that's what we thought we were talking about. Yeah, but the examiner didn't, and you could have fixed it. I mean, you thought you were talking about that. Why not say so in the claim? It's just a medical claim. Easiest thing in the world. It's not so easy once because as prosecution goes on, and these are cases that have been asserted against a lot of entities and the claims have been published, amending gets to be an issue. The client has settled with Microsoft, which copied this stuff first. He had a booth at Comdex. It was great stuff, and Microsoft loved it. So we're reluctant to amend too quickly when the prosecution is very, very late. And on this situation, we believe the context is really good. And as I mentioned, we have the type variation limitation that was also not met because Wainwright keeps recalling the same stuff. It's like Monty Python, and he says, and now for something completely different, and it's the same thing over again. That's what Wainwright does because whenever it does a search, it retrieves the full record, and it displays a partial record with lots of results if there's more than one. Otherwise, it displays the full record. But in each case, it's the same thing. So we had several grounds that we thought we were quite solid on, and for that reason, we felt we could get fixed up in front of the board, and we didn't. Thank you. Thank you so much. Thank both parties, and the cases are submitted.